**BOARD OF TRUSTEES OF TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC.—PENSION FUND, Plaintiff,**

v.

**GOTHAM FUEL CORPORATION, a New Jersey Corporation, and Hobin Fuel Oil, a New Jersey Corporation, Oil City Petroleum, a New York Corporation, Ray Combustion Corporation, a New Jersey Corporation, Jersey York Corporation, a New Jersey Corporation, Murray Haber, a sole proprietorship, jointly and severally, Defendants.**

Civ. A. No. 92–4094.

United States District Court,
D. New Jersey.

April 27, 1993.

---

**16.** There can be no doubt that at least some CLEOs will find it in their own best interest to conduct background checks.

Herbert New and David W. New, P.C., Clifton, NJ, Eames, Wilcox, Mastej, Bryant, Swift and Riddell, Elizabeth Roberto, Detroit, MI, for plaintiff.

Grotta, Glassman & Hoffman, P.A., Kirsten Hotchkiss, Roseland, NJ, for defendants.

## OPINION

HAROLD A. ACKERMAN, District Judge:

In this action, plaintiff Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc.—Pension Fund ("Trustees") seeks to collect a statutory assessment of withdrawal liability from defendants Gotham Fuel Corporation, Hobin Fuel Oil, Oil City Petroleum, Ray Combustion Corporation, Jersey York Corporation, and Murray Haber [1] pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381, *et seq.* Before me now are the following motions: 1) plaintiff's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56(a) as to the corporate defendants Gotham Fuel Corporation, Hobin Fuel Oil, Oil City Petroleum, Ray Combustion Corporation, and Jersey York Corporation ("Oil Group") and to strike defenses as to all the defendants; 2) defendants' cross-motion for sum-

---

1. Defendants have stipulated to the filing of an amended complaint which names Alfred Haber and Tessie Haber as additional defendants.

mary judgment pursuant to Fed.R.Civ.P. 56(b). For the following reasons, plaintiff's motion for partial summary judgment is granted and defendants' cross-motion is denied. Plaintiff's motion to strike defenses is granted in part and denied in part.

## I. Overview of ERISA and MPPAA

■ Under ERISA, an employer may contribute to a pension plan on behalf of its employees who belong to a participating union. Congress found, however, that ERISA did not adequately protect pension plans from the adverse consequences that resulted when employers withdrew from the plans. *Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia,* 830 F.2d 1241, 1243 (3d Cir.1987) (*quoting Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 722, 104 S.Ct. 2709, 2714, 81 L.Ed.2d 601 (1984)). Congress, therefore, enacted the MPPAA in order to protect the solvency of multiemployer pension plans. *See IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.,* 788 F.2d 118, 127 (3d Cir.1986) ("The MPPAA was designed '(1) to protect the interests of participants and beneficiaries in financially distressed multiemployer plans, and (2) ... to ensure benefit security to plan participants.'") (*quoting* H.R.Rep. No. 869, 96th Cong., 2d Sess. 71, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918, 2939). Pursuant to the MPPAA, when a contributing employer to a multiemployer pension plan withdraws from participation in the plan, the plan's trustees may collect withdrawal liability from the employer.[2]

Under the MPPAA's statutory scheme, once an employer withdraws from a pension plan, the plan's trustees must make a determination of the amount of the withdrawal liability owed. 29 U.S.C. §§ 1381, 1382(1). The trustees must then notify the employer of the amount of the liability assessed and demand payment. 29 U.S.C. §§ 1382(2), 1399(b)(1). The employer then has 90 days from receipt of the Notice to request a review of the liability determination by the

trustees of the plan. 29 U.S.C. § 1399(b)(2)(A)(i). If the dispute over the existence or amount of the liability is not resolved, either party may institute arbitration proceedings. 29 U.S.C. § 1401(a)(1). If the employer fails to initiate arbitration proceedings, the withdrawal liability assessment becomes due and owing and the trustees may commence an action to collect the unpaid withdrawal liability from the employer. 29 U.S.C. §§ 1401(b)(1), 1451.

■ Under the MPPAA, all trades or businesses under "common control" with a contributing employer are treated as a "single employer." 29 U.S.C. § 1301(b)(1). Such a group of business entities is known as a "controlled group." Since all the members of a controlled group are to be treated as one employer, each member is liable for the withdrawal liability of any other member of the controlled group. *Flying Tiger,* 830 F.2d at 1244. The primary purpose of the controlled group concept is to prevent an employer from avoiding its responsibilities under ERISA by conducting its operations through many related but separate entities. *See* S.Rep. No. 383, 93d Cong., 2d Sess. 43, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4890, 4928; *see also* H.Rep. No. 807, 93d Cong., 2d Sess. 50, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4670, 4716.

## II. Factual Background

The following facts are undisputed.

Plaintiff Trustees is the plan sponsor of a multiemployer pension fund ("Fund") as defined under ERISA. 29 U.S.C. §§ 1002(37), 1301(a)(3). The Fund provides retirement benefits to plan participants who are members of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 560 ("Local 560").

Oil City Petroleum Company, a New Jersey corporation, ("Oil City–NJ") was a contributing employer to the Fund.[3] Pursuant

---

**2.** Withdrawal liability is defined as the employer's adjusted "allocable amount of unfunded vested benefits." 29 U.S.C. § 1381(b)(1).

**3.** Oil City–NJ is not a party to this action. Defendant Oil City Petroleum, a New York Corporation, is a separate entity and will be referred to as "Oil City–NY."

to collective bargaining agreements with Local 560, Oil City–NJ agreed to make contributions to the Fund on behalf of its employees covered by the agreements. In September 1984, Oil City–NJ ceased operations and ceased paying contributions to the Fund.

The Trustees determined that Oil City–NJ had permanently terminated operations and calculated its withdrawal liability. On November 19, 1984, the Fund sent Oil City–NJ a notice and demand for payment of its withdrawal liability under the provisions of the MPPAA ("Notice"). The Notice set forth the total amount of the withdrawal liability assessment, $59,966.00, which was to be paid in monthly installments of $1,738.00 beginning on February 1, 1985. The Notice also informed Oil City–NJ that it had 90 days from receipt of the Notice to request a review of the Trustees' assessment determination and to seek arbitration before the New Jersey State Board of Mediation—Pension and Welfare Panel. The Notice also stated that the Trustees had a right to look to another company under common control with Oil City–NJ in the event the assessment could not be collected from it.

No review or arbitration proceedings were initiated within ninety days of receipt of the Notice and no payment of the withdrawal liability assessment was made. On February 7, 1985, the Trustees sent a past due Notice to Oil City–NJ.

On October 8, 1985, the Fund commenced an action in United States District Court in New Jersey against Oil City–NJ. *See Trucking Employees of North Jersey Welfare Fund, Inc. v. Oil City Petroleum,* Civ. Act. No. 85–4782. A default judgment was entered against Oil City–NJ on September 25, 1986 in the amount of $59,966.00, plus interest of $10,194.22, liquidated damages of $11,993.20, and attorneys' fees and costs of $2,750.00, totalling $84,897.42. To date, no part of this judgment has been paid.

Over six years later, and eight years after Oil City–NJ first defaulted on its withdrawal liability, the Trustees instituted this action against the defendants, alleging that they are liable for the withdrawal liability assessment and the 1986 judgment.

It is conceded that defendants Gotham Fuel Corporation, Hobin Fuel Oil, Oil City–NY, Ray Combustion Corporation and Jersey York Corporation ("Oil Group") were, as of the date of the withdrawal, members of a controlled group with the contributing employer, Oil City–NJ.

III. Discussion

A. Standard for Summary Judgment

Summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Todaro v. Bowman,* 872 F.2d 43, 46 (3d Cir.1989); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.), *cert. dism'd,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Put differently, "summary judgment may be granted if the movant shows that there exists no genuine issues of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hospital,* 843 F.2d 139, 143 (3d Cir.), *cert. denied,* 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is material if it influences the outcome under the governing law. *Id.* at 248, 106 S.Ct. at 2510.

Within the framework set out above, the moving party essentially bears two burdens. First, there is the burden of production, of making a prima facie showing that it is entitled to summary judgment. This may be done either by demonstrating that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or by demonstrating that the nonmoving party has not shown facts relating to an essential element of the issue for which it bears the burden. Once either showing is made, this burden shifts to the nonmoving party who must demonstrate facts supporting each element for which it bears the bur-

den as well as establish the existence of genuine issues of material fact. Second, there is the burden of persuasion. This burden is a stringent one which always remains with the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330–33, 106 S.Ct. 2548, 2556–58, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Advisory Committee's Notes on Fed.R.Civ.P. 56(e), 1963 Amendment; *see generally* C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (2d ed. 1983).

**B. Plaintiff's Motion and Defendants' Cross–Motion for Summary Judgment**

The plaintiff seeks partial summary judgment against the Oil Group arguing that the members of the Oil Group, as members of a controlled group with Oil City–NJ, are liable jointly and severally for the withdrawal liability as a matter or law. Defendants have cross-moved for summary judgment arguing that the present action is time-barred.

▇▇▇ As noted above, under the MPPAA, all trades or businesses under "common control" are treated as a "single employer." 29 U.S.C. § 1301(b)(1). Thus, members of a group of businesses under common control with a contributing employer are liable for the employer's withdrawal liability. *Flying Tiger*, 830 F.2d at 1244 ("Since a controlled group is to be treated as a single employer, each member of such a group is liable for the withdrawal of any other member of the group.").[4] Here, it is undisputed that the Oil Group defendants were trades or businesses under common control with Oil City–NJ at the time of withdrawal in 1984. Thus, as members of a controlled group with Oil City–NJ, they are liable for its withdrawal liability

assessment. Moreover, by failing to demand review and arbitration of the withdrawal liability assessment, the controlled group has waived the right to contest the amount of withdrawal. *See Local 478 Trucking and Allied Industries Pension Fund v. Jayne*, 778 F.Supp. 1289, 1313 (D.N.J.1991). The only issue that remains therefore is whether this action is time-barred.[5]

▇▇▇ Defendants argue that the present action is barred by the statute of limitations set forth in the MPPAA. *See* 29 U.S.C. § 1451(f). Section 1451(f) provides:

An action under this section may not be brought after the later of—

(1) 6 years after the date on which the cause of action arose, or

(2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

29 U.S.C. § 1451(f). Defendants argue that because plaintiff did not institute this action until September 1992, more than six years after the cause of action arose, the action is time-barred.[6]

▇▇▇ Plaintiff argues, however, that the MPPAA statute of limitations applies only to the initial action against a controlled group member. Once a judgment is obtained against any one or more members of a controlled group, the judgment can be enforced against any other member of the controlled group and the MPPAA limitations period is no longer applicable. Rather, the applicable statute of limitations is the one governing enforcement of judgments. Plaintiff thus concludes that New Jersey's 20–year statute

---

4. ERISA incorporates the Internal Revenue Code's "controlled group" standards for determining control group status under ERISA. 29 U.S.C. § 1301(b); *see* 26 U.S.C. §§ 414, 1563.

5. The Oil Group defendants concede that in the event plaintiff's action is found by the court not to be time-barred, they are subject to Oil City–NJ's withdrawal liability.

6. A cause of action arises when the employer fails to make its first payment following demand for payment by the pension fund. *See Joyce v. Clyde Sandoz Masonry*, 871 F.2d 1119, 1124 (D.C.Cir.), *cert. denied*, 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989).

of limitations applies to the present action.[7] Because the present action was commenced within six years after the judgment against Oil City–NJ was entered, application of this limitations period would render the present action timely commenced.

Plaintiff's argument that the judgment obtained against the employer can be subsequently enforced against controlled group members is based on the premise that under the MPPAA, members of a controlled group are statutory alter-egos. Plaintiff argues that the MPPAA makes members of a controlled group into a single entity and that once an action is brought the statute of limitations is tolled as to the entire controlled group.

Recently, my colleague, Judge Lifland, had occasion to consider this very same issue. *See Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc.— Pension Fund v. Able Truck Rental Corp., et al.,* 822 F.Supp. 1091 (D.N.J.1993). In *Able Truck,* the Court found that "pursuant to the single employer concept adopted by the Third Circuit ... only one withdrawal liability judgment can exist against members of a controlled group." *Id.,* 822 F.Supp. at 1095. The Court therefore concluded that "all subsequent actions against different members of the controlled group are actions to enforce the judgment previously entered, and such an action is timely if brought within the period of the statute of limitations for enforcement of judgments." *Id.*

I find Judge Lifland's reasoning persuasive. Members of a controlled group are deemed, by law, to constitute a single entity. *See* 29 U.S.C. § 1301(b)(1) (businesses under common control treated as a "single employer"); *Barker & Williamson,* 788 F.2d at 127 ("language of ERISA indicates that pension funds should be entitled to deal with members of a controlled group as a single entity."); *Connors v. Calvert Development Co.,* 622 F.Supp. 877, 881 (D.D.C.1985) ("The requirement that members of a controlled group, such as defendants, be treated as a single employer means that plan trustees can operate as if defendants were one entity."). Accordingly, the Third Circuit has held that notice to one controlled group member constitutes constructive notice to *all* members. *Barker & Williamson,* 788 F.2d at 127. Similarly, a judgment against one member constitutes a judgment against all other members.[8] As such, once a judgment is obtained against one controlled group member, any subsequent action against other controlled group members is an action to enforce the judgment, governed by the statute of limitations for the enforcement of judgments. *See* Fed.R.Civ.P. 69.

This analysis is consistent with the legislative intent underlying ERISA and the MPPAA.

The legislative background of ERISA and the MPPAA makes it abundantly clear that, for the purpose of these two statutes, Congress was unconcerned with the actual

---

**7.** Under Fed.R.Civ.P. 69, the procedure applicable to the enforcement of judgments is derived from the procedure of the state in which the district court sits. The New Jersey statute of limitations for the enforcement of judgments is set forth in N.J.S.A. 2A:14–5, which provides that an action on a judgment may be commenced within 20 years from the date of the judgment.

**8.** Although, as defendants argue, the statute of limitations issue was not before the Third Circuit in *Barker & Williamson,* the Court's reasoning nevertheless provides guidance for deciding other cases involving controlled group liability under the MPPAA.

Defendants also rely on *Central States, Southeast and Southwest Areas Pension Fund v. Van Vorst Industries, Inc.,* 1992 WL 37448, 1992 U.S.Dist. LEXIS 5200 (N.D.Ill.1992) in arguing that the Third Circuit's holding in *Barker & Williamson* actually supports their position. Defen-

dants' contention is unpersuasive. *Van Vorst* did not address the issue of whether a judgment against one controlled group member may be enforced against other controlled group members. In *Van Vorst,* none of the controlled group members had been sued within the six-year limitations period under Section 1451(f). The issue in *Van Vorst* was whether a cause of action arises under Section 1451(f) every time a pension fund learns of the existence of a controlled group member. The court relied on the holding that notice to one member constitutes notice to all members in reaching its conclusion that a cause of action arises as to all controlled group members at the same time, that is, when demand for payment has not been met. This conclusion, however, is consistent with a determination that a judgment against one member constitutes a judgment against all members.

corporate form of a business. In promulgating the control group definition, Congress instructed the trustees, arbitrators, and the courts to disregard the corporate form and treat several inter-related corporations as one entity, the ERISA "employer"....

*Robbins v. Pepsi–Cola Metropolitan Bottling Co.*, 636 F.Supp. 641, 659 (N.D.Ill.1986).

Members of a controlled group are, in effect, "statutory alter egos." *Able Truck*, 822 F.Supp. at 1095. As such, actions permitting a plaintiff to pierce the corporate veil and enforce a judgment against an alter ego of a judgment debtor are applicable. Courts have consistently held that the applicable statute of limitations in collection actions against an alter ego of a judgment debtor is the one governing enforcement of judgments. *See, e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 143 (2d Cir.1991); *United States v. Southern Fabricating Co.*, 764 F.2d 780, 783 (11th Cir.1985); *Matter of Holborn Oil Trading Ltd. & Interpetrol Bermuda Ltd.*, 774 F.Supp. 840, 847 (S.D.N.Y.1991); *United States v. Clawson Medical Rehabilitation & Pain Care Center*, 722 F.Supp. 1468, 1471 (E.D.Mich.1989); *see also* 1 *Fletcher's Cyclopedia on Corporations*, § 45 at 821 (Perm. ed.) ("the alter ego theory means that, when a party is regarded as identical to a corporation, the filing of a cause of action against the corporation will toll the limitations period as to the alter ego"). In such actions, the alter egos are treated as a single entity. Thus, because "the previous judgment is ... being enforced against entities who were, in essence, parties to the underlying dispute," the applicable limitations period is held to be the one governing enforcement of judgments. *Wm. Passalacqua*, 933 F.2d at 143.

Defendants argue that controlled group members are not *per se* alter egos and that controlled group liability is an independent cause of action, distinct from a claim based on alter ego liability.[9] Because plaintiff's action is brought pursuant to ERISA and the MPPAA, defendants contend that the only applicable statute of limitations is that set forth in ERISA. Defendants argument misses the point. Plaintiff is not relying on a common law alter ego theory and, indeed, such reliance is unnecessary. The MPPAA and the Third Circuit have established that controlled group members are to be treated as a single entity. Thus, the cases involving common law alter egos are being used by analogy. Certainly, controlled group members are at least analogous to common law alter egos. In fact, permitting a plaintiff to enforce a judgment against a controlled group member is more justified than in the case of common law alter egos. Controlled group members are statutorily determined to be "single entities," without the necessity of a finding of improper motive or wrongdoing. *See Pension Benefit Guaranty Corp. v. Ouimet Corp.*, 711 F.2d 1085, 1093 (1st Cir.), *cert. denied*, 464 U.S. 961, 104 S.Ct. 393, 78 L.Ed.2d 337 (1983); *Jayne*, 778 F.Supp. at 1306. In essence, Congress intended to make it easier for pension funds to collect withdrawal liability from business entities related to a contributing employer. As this Court has recognized,

> The significance of the statutory determination that all members of the controlled group are to be treated as though they constitute a single employer is that the Fund is not required to prove that the controlled group members abused their separate identities to evade or avoid withdrawal liability. *The Fund is not required to show anything other than mere common ownership.*

*Jayne*, 778 F.Supp. at 1306 (emphasis in original) (*quoting O'Connor v. DeBolt Transfer, Inc.*, 737 F.Supp. 1430, 1442 (W.D.Pa.

---

9. In arguing that controlled group liability is an independent cause of action, distinct from alter ego liability, defendants rely on *Connors v. Peles*, 724 F.Supp. 1538 (W.D.Pa.1989). Defendants' reliance, however, is misplaced. In *Connors*, the plaintiffs proceeded exclusively on a common law theory of alter ego liability; no controlled group claim under ERISA was ever asserted in that case. Under those circumstances, the *Connors* court stated that the plaintiffs could not rely on controlled group concepts to establish liability

1990)).[10]

Defendants also rely on a report and recommendation of a Magistrate Judge who found in favor of defendants' position on this issue. *See Central States, Southeast and Southwest Areas Pension Fund v. Mississippi Warehouse Corporation,* 1992 U.S.Dist. LEXIS 14829 (N.D.Ill.1992). As in this case, the plaintiff in *Mississippi Warehouse* sought to enforce a judgment previously obtained against an employer against other controlled group members. The action was brought ten years after the initial default. Magistrate Weisberg held that the plaintiff was bound to the limitations period of Section 1451(f).

I find Magistrate Weisberg's opinion unpersuasive. First, the Magistrate found that although controlled group members constitute a "single employer," they are not the "same entity," explaining that "§ 1301(b)(1) does not purport to deny the separate existence of trades or businesses under common control with a withdrawing employer...." Slip. op. at 9. I emphatically disagree. The law is clearly to the contrary. *See Barker & Williamson,* 788 F.2d at 127 (controlled group members are to be treated as a "single" entity); *Robbins,* 636 F.Supp. at 641 (courts are to disregard the corporate form and treat controlled group members as "one" entity); *Calvert,* 622 F.Supp. at 881 (single employer concept "means that plan trustees can operate as if defendants were one entity.").

The Magistrate also reasons that if a pension fund brings an action under Section 1451, then it must be bound by the limitations period set forth in Section 1451(f). I believe the better view, one that comports with the policies underlying ERISA and the MPPAA, is that the initial action brought by a pension plan to obtain a judgment of withdrawal liability must be brought within the six-year limitation period set forth in Section 1451(f). Once a judgment is obtained, however, it can be enforced against other controlled group members in the same way it could be enforced against an alter ego, that is, pursuant to the statute of limitations governing enforcement of judgments.

 Finally, Magistrate Weisberg points to the ERISA preemption provision, 29 U.S.C. § 1144(a), which preempts all state laws relating to any employee benefit plan, concluding that Congress did not intend to give pension plans "alternate routes" to collect withdrawal liability. Slip op. at 9. First, it is doubtful that statutes of limitations are state laws "relating to any employee benefit plan." *See, e.g., Retirement Fund Trust of Plumbing v. Franchise Tax Board,* 909 F.2d 1266, 1274 (9th Cir.1990) ("state law of general application with only a 'tenuous' effect on an ERISA plan is not [preempted]."); *Rebaldo v. Cuomo,* 749 F.2d 133, 137 (2d Cir.1984) (to fall within preemption provision, state law must purport to regulate terms and conditions of employee benefit plans), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). Moreover, the Federal Rules of Civil Procedure expressly incorporate state procedures with respect to the enforcement of judgments. *See* Fed. R.Civ.P. 69. Finally, the Magistrate's assertion that Congress did not intend to give pension funds "alternate routes" to collect withdrawal liability is completely contrary to Congress express purpose in enacting the MPPAA.[11]

under the common law alter ego theory advanced by plaintiffs. *Id.* at 1577.

**10.** See also 1 *Fletcher's Cyclopedia on Corporations,* § 45 at 822, which states:

There is some authority for the position that the corporate form, being a creation of the state and controlled by state law, does not impose restrictions on the application of federal statutes.... Accordingly, in cases justified by underlying public policy purposes—such as the pension plan termination liability provisions of ERISA, the separate entities of an affiliated group of corporations may be disregarded without any need to demonstrate the existence of factors, such as fraud, wrongdoing, dominance, or undercapitalization, that are usually associated with state law alter ego principles.

**11.** I note that another Magistrate from the Northern District of Illinois recently reached the opposite conclusion from that of Magistrate Weisberg. In *Central States, Southeast and Southwest Areas Pension Fund v. Profit–Sharing Plan of G & S Terminals, Inc.,* Civ.Act. No. 92 C 0668 (March 26, 1993), Magistrate Pallmeyer held that the applicable statute of limitations was the one governing enforcement of judgments.

As noted above, Congress enacted the MPPAA to protect the solvency of multiemployer pension plans and the interests of participants and beneficiaries of pension plans. *See Barker & Williamson*, 788 F.2d at 127. As the Third Circuit has observed, "because ERISA (and the MPPAA) are remedial statutes, they should be liberally construed in favor of protecting the participants in employee benefit plans." *Id.* Application of the limitations period for the enforcement of judgments clearly would further the policies underlying ERISA and MPPAA.[12]

Based on all these reasons, plaintiff's motion for partial summary judgment as against the Oil Group defendants is granted and defendants' cross-motion for summary judgment is denied.[13]

C. Plaintiff's Request for Interest, Liquidated Damages, Attorneys' Fees and Costs

Plaintiff also argues that it is entitled to an award of interest, double interest or liquidated damages, and attorneys' fees and costs.

■■■ 29 U.S.C. § 1451(b) provides that the failure to make a withdrawal liability payment is to be treated as a delinquent contribution within the meaning of 29 U.S.C. § 1145. *United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d

128, 134 (3d Cir.1986), *aff'd*, 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987). Thus, plaintiff's action to enforce Oil City–NJ's withdrawal liability is to be treated as an action brought under Section 1145. 29 U.S.C. § 1132(g) provides that in any action brought by a pension plan to enforce Section 1145 in which a judgment is awarded in favor of the plan, the court must award interest on the unpaid contributions, reasonable attorneys' fees and costs, and the greater of either 20% of the unpaid contributions or an amount equal to the accrued interest. 29 U.S.C. § 1132(g). Such an award is mandatory. *See Yahn*, 787 F.2d at 134 ("§ 1132 made attorney's fees, costs and liquidated damages mandatory upon a judgment in favor of a pension plan").

As noted above, plaintiff is entitled to a judgment in its favor on defendants' withdrawal liability as a matter of law. Accordingly, pursuant to 29 U.S.C. §§ 1132(g) and 1145, it is entitled to an award of interest on the amount of the unpaid withdrawal liability assessment, liquidated damages (the greater of 20% of the withdrawal liability assessment or interest), and reasonable attorneys' fees and costs. *See Able Truck, supra*, at 1096.[14]

D. Motion to Strike Defenses

Plaintiff has also moved pursuant to Fed. R.Civ.P. 12(f) to strike defenses one through

---

The Magistrate reasoned that "controlled group members under ERISA, like common law alter egos, are deemed by law to constitute a single entity. Indeed, the argument for unitary treatment of controlled group members may be stronger than the argument for such treatment of alter egos...." Slip op. at 13. The Magistrate also found that application of the limitation period for enforcement of judgments would further congressional intent underlying ERISA. *Id.* at 14.

**12.** Defendants also argue that application of the limitations period for enforcement of judgments would permit piece-meal litigation and that the Trustees should have sued all the controlled group members together in the first action against Oil City–NJ. Defendants rely on *Connors*, 724 F.Supp. at 1579. As noted above, reliance on *Connors* is misplaced. The *Connors* court stated, in *dicta*, that the plaintiff was precluded from bringing the second action based on the doctrine of *res judicata*. Here, the defendants have not even raised a *res judicata* defense, nor could they. Liability under a controlled group theory is joint and several. It is well-

settled that in the case of joint and several liability, the plaintiff can sue one or more defendants, separately or together, at the plaintiff's option. *Central States, Southeast & Southwest Areas Pension Fund v. Sztanyo Trust*, 693 F.Supp. 531, 540 (E.D.Mich.1988). Thus, "the Fund is not required to sue all of the controlled group in one action or lose its rights against unjoined parties; it may even sue each member separately if it elects to." *Central States, Southeast & Southwest Areas Pension Fund v. Hayes*, 789 F.Supp. 1430, 15 EBC 1168, 1172 (N.D.Ill.1992).

**13.** In light of this court's disposition, the court need not consider plaintiff's alternative argument based on 29 U.S.C. § 1451(f)(2), which tolls the ERISA statute of limitations until plaintiff discovers or should have discovered the existence of a cause of action.

**14.** Defendants have also requested an award of their attorneys' fees pursuant to 29 U.S.C. § 1451(e), which permits a court to award reasonable attorneys' fees to the "prevailing party." Because defendants are not the prevailing party in this action, defendants' request is denied.

nine against all defendants. These defenses are: 1) failure to state a claim; 2) failure to state a claim for liquidated damages; 3) failure to state a claim for an award of attorneys' fees; 4) waiver; 5) estoppel; 6) failure to pursue arbitration; 7) statute of limitations; 8) noncompliance with administrative procedures; and 9) laches.

Defendants have not opposed plaintiff's motion as to the Oil Group defendants and expressly concede that if the court finds that New Jersey's 20–year statute of limitations applies to this action, the Oil Group defendants are subject to Oil City–NJ's withdrawal liability. Therefore, plaintiff's motion to strike defenses is granted as to the Oil Group defendants.

 Defendants oppose the motion, however, as to the individual defendant Murray Haber ("Haber"). They argue that the parties are in the midst of discovery and that in the absence of any proof that Haber is a member of the controlled group, the motion to strike his defenses is premature.

Rule 12(f) provides, in part: "[u]pon motion made by a party ... the court may order stricken from the pleading any insufficient defense." Fed.R.Civ.P. 12(f). Motions to strike are generally disfavored by the courts.

> Thus, even when technically appropriate and well-founded, they often are not granted in the absence of a showing of prejudice to the moving party.... [E]ven when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits.
> Nor will a Rule 12(f) motion be granted if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the issue by drawing inferences from facts and statements that are not disputed.... In sum, a motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits.

5A Wright & Miller, *Federal Practice and Procedure,* § 1380 at 672–78. "[T]he court's discretion is narrowly circumscribed on a motion to strike affirmative defenses." *United States v. Kramer,* 757 F.Supp. 397, 410 (D.N.J.1991). As the Third Circuit has cautioned, "a court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.' The underpinning of this principle rests on a concern that a court should restrain from evaluating the merits of a defense where, as here, the factual background for a case is largely undeveloped." *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 188 (3d Cir.1986) (citations omitted).

Here, the parties concede that they are in the middle of discovery with respect to the individual defendant Haber. Because the factual background remains undeveloped, I find that this part of plaintiff's motion to strike is premature. *See Kramer,* 757 F.Supp. at 410 (holding that it was premature to strike defenses where parties had little opportunity for discovery). Plaintiff's motion as to defendant Haber is, therefore, denied.

### Conclusion

For the foregoing reasons, plaintiff's motion for partial summary judgment is granted and defendants' summary judgment motion is denied. Plaintiff is entitled to the full amount of the withdrawal assessment liability of $59,966, as well as interest, liquidated damages and reasonable attorneys' fees and costs from the Oil Group defendants. Plaintiff's motion to strike defenses is granted as to the Oil Group defendants and denied as to defendant Haber. Defendant's request for attorneys' fees is denied.