ROSENN, Circuit Judge,
dissenting.
The majority has fashioned a principle that eviscerates the intent of the Multiem-ployer Pension Plan Amendments Act of 1980 (“MPPAA” or “the Act”) and vitally undermines a pension fund’s ability to enforce its judgment against a defaulting employer. Although the MPPAA provides for a six-year statute of limitations within which to initiate suits for the determination of the underlying pension liability, it is silent with respect to enforcement of judgments, leaving that aspect to existing state and federal laws. The enforcement of judgments often requires prolonged investigations in an effort to identify and find related entities and their resources. The majority expands the Act’s six-year statute of limitations not only to govern an underlying claim for withdrawal liability against an employer, but also to deny the pension fund an opportunity to make factual determinations regarding the liability of related entities.
The evidence in this case shows that the employer shifted its liability among a tangled web of domestic and foreign corporate entities, frustrating the Trucking Employees of North Jersey Welfare Fund’s (the “Fund”) continuous efforts to collect pension liability under the mechanisms prescribed by ERISA and the MPPAA. The majority, by treating the judgment against the employer, Route Resources, as a nullity with respect to members of the “control group,” thus enables the latter to evade statutory liability under the Act. I believe that the majority’s expansive and unrealistic interpretation of the MPPAA’s statute of limitations and its narrow view of the control group is contrary to the letter and purpose of the MPPAA, as well as the precedent in this circuit. Therefore, I respectfully dissent.
I.
When drafting the MPPAA, Congress endowed the legislation with several key provisions designed to assist pension funds in collecting withdrawal liability from delinquent or evasive employers in situations such as the case at bar. The statutory scheme provides: (1) all trades or businesses in a “control group” will be treated as a “single employer,” 29 , U.S.C. § 1301(b)(1); (2) if a pension fund makes a factual determination that an employer has conducted a transaction for the primary purpose of “evading or avoiding” pension liability, the pension fund may disregard the transaction, 29 U.S.C. § 1392(c); (3) if an employer disputes a factual determination made by a pension fund, that dispute *306 must be resolved through arbitration before a civil suit may proceed, 29 U.S.C. § 1401(a)(1); and (4) suits against an employer to collect withdrawal liability must be brought within six years of the accrual of the action, 29 U.S.C. § 1451(f).
In the seminal case of IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118 (3d Cir.1986), this court recognized that a liberal construction of the MPPAA’s provisions in favor of pension funds is consistent with the statute’s legislative intent. 788 F.2d at 127 (citing H.R.Rep. No. 869, 96th Cong., 2d Sess. 71, reprinted in 1980 U.S.Code Cong. & Ad. News 2918, 2939). Furthermore, “[cjourts have indicated that because ERISA (and the MPPAA) are remedial statutes, they should be liberally construed in favor of protecting the participants in employee benefit plans.” Id. (citing Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir.1984); Rettig v. PBGC, 744 F.2d 133, 155 (D.C.Cir.1984)). In this case, the majority has disregarded these guideposts, and instead engages in a rigid construction of the MPPAA that is inconsistent with the statute, departs from the prior holdings of this court, and defies the MPPAA’s legislative intent acknowledged by this and other courts.
There are two significant provisions in the MPPAA that underlie the analysis in this case. First, the MPPAA stipulates that pension funds may treat all trades and businesses under “common control” as a “single employer.” 29 U.S.C. § 1301(b)(1).[19] This “single employer” principle allows pension funds to deal exclusively with the defaulting employer known to the fund, while at the same time assuring themselves that legal remedies can be maintained against all related entities in the control group. In Barker & Williamson, we derived from the MPPAA’s “single employer” principle the logical corollary that notice of pension liability provided to one entity in a control group constitutes constructive notice to all entities in the control group. 788 F.2d at 127. We noted the practical necessity for this principle, acknowledging that pension funds have no way of knowing ownership arrangements among closely held corporations. Id. at 128. The court reasoned that:
[hjolding the fund responsible for providing notice to all other possible entities that might subsequently be deemed to be in a controlled group with the employer corporation would place the fund in an untenable position. In contrast, the stockholders and officers of corporations ... certainly are aware of their holdings. If they choose to ignore ... potential liability as a member of a controlled group under the MPPAA, then they should suffer the consequences if that issue is subsequently determined adversely to them.

Id.

Second, Congress acknowledged that employers owing significant pension liability may attempt to avoid their obligations through evasive transactions. See Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1248 (3d Cir.1987). For example, a corporate entity with pension liability may be sold to a separate, undercapitalized corporate entity that then declares bankruptcy, thereby frustrating a pension fund’s efforts to collect from the employer. To remedy this evasive practice, the MPPAA states that if the primary purpose of a transaction is to *307 “evade or avoid” pension liability, a pension fund may disregard the transaction, and “liability shall be determined and collected ... without regard to such transaction.” 29 U.S.C. § 1392(c). Notably, if an employer disputes a pension fund’s determination that a transaction was primarily conducted to “evade or avoid” pension liability, the employer must seek arbitration to resolve this factual dispute before the court proceeding may continue. 29 U.S.C. § 1401(a)(1); Flying Tiger Line, 830 F.2d at 1248. Once in arbitration, Congress further tipped the scales in favor of pension funds by granting a presumption that any factual determination by the fund is correct, unless the employer shows by a preponderance of the evidence that the fund’s finding was “unreasonable or clearly erroneous.” 29 U.S.C. § 1401(a)(3)(A). The Supreme Court has interpreted this language to place the burden of persuasion on the employer during arbitration to “disprove a challenged factual determination by a preponderance.” Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust of Southern California, 508 U.S. 602, 629, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993).
II.
The Fund’s position in this case may be boiled down to two arguments that support its claim to collect pension liability from the DefendantyAppellee Robert Holmes (“Holmes”). First, as a factual matter, the Fund asserts that Holmes participated in a transaction intended to “evade or avoid” pension liability. Thus, as Congress provided in the MPPAA, the Fund may disregard the transaction and treat Holmes as a continuing member of the control group. 29 U.S.C. § 1392(c). Second, as a matter of law, the Fund argues that because it brought a claim against a member of the employer control group in 1995, it has satisfied the MPPAA statute of limitations, leaving the Fund free bring the present suit against Holmes as an action to enforce the 1995 judgment.
A.
Through a combination of stock and trust, Holmes was the owner of Holmes Transportation, Inc., (“HTI”), Kero Leasing Corp. (“Kero”) and other related personal proprietorships.[20] In 1988, Holmes transferred his interest in these related companies to Route Resources, a Canadian-owned holding company. The Fund points to significant evidence in the record indicating that Holmes’ transaction was intended to evade pension liability. For example, Holmes originally signed a collective bargaining agreement with the Teamsters Local Union No. 560 in May of 1985, constituting his initial personal promise to make payments to the Fund. Then, several months later in October of 1985, Holmes incorporated Kero and assigned the agreement (and the corresponding pension liability) to it. At that point, Kero had no apparent assets except the bare collective bargaining agreement. In what may have been a further attempt to isolate assets from liabilities, the record indicates that Holmes transferred a large piece of real estate in Framingham, Mass., worth over $10 million, from HTI to himself personally in December 1987, prior to conducting the sale to Route Resources. Next, Holmes transferred HTI’s remaining assets into two shell corporations to facilitate the sale to Route Resources. Kero’s stock, which may be better characterized as the large pension liability, was *308 then transferred to Route Resources separately from the corporations now containing the assets.
Despite the sale, Holmes displayed an initial intent to remain involved with the companies through a fifteen year management consulting contract worth $4,725,000, which was included as part of the sale agreement. Yet, the parties walked away from the agreement after only a single payment of $78,750 covering three months of services. Not surprisingly, a bankruptcy trustee appointed for the HTI estate opined that the Route Resources transaction “was made upon insufficient consideration.” Trucking Employees of North Jersey Welfare Fund, Inc. v. Route USA Real Estate, Inc., No. 90-4489, slip op. at 2 (D.N.J. May 23,1991).
At some point in 1988, either during the negotiation of the alleged sale or soon after the transaction closed, Kero and/or Route Resources stopped making payments to the Fund. In July of 1989, shortly after the execution of the purchase agreement, Route Resources conveyed the capital stock of HTI to Anthony Matarozzo, the owner of Arrow Carrier, Inc. Six months later, HTI filed a petition in bankruptcy.
Almost immediately after Kero stopped making pension payments, the Fund did its best to follow this elusive chain of ownership and serve notice of withdrawal liability on the appropriate parties as required under the MPPAA. The Fund’s efforts included several notice letters sent to Matarozzo from 1990 through 1992, as well as letters sent to Route Resources and Kero Leasing at their last known addresses. The Fund received no response until 1992, when Matarozzo finally informed the Fund that his purchase of HTI from Route Resources did not include Kero or Kero’s pension liability. Thus, the Fund’s pursuit of Matarozzo over a three year period was a red herring. Interestingly, the District Court in this case noted that when Anthony Matarozzo eventually responded to the Fund, he was in prison serving a sentence for theft from a separate pension fund. Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc.—Pension Fund v. Kero Leasing Corp., et al., No. 98-1476, slip op. at 4 (D.N.J. Oct. 26, 1999).
While the actual determination of whether this transaction was intended to “evade or avoid” pension liability is a matter for arbitration, the claims presented by the Fund and reinforced by the District Court facially support a factual determination of evasive intent. This determination should not be undermined by Holmes’ dubious effort to invoke the statute of limitations.
B.
After years of frustration from chasing Kero’s phantom owners, the Fund decided to switch tactics, retain new counsel, and address the matter in court. The Fund’s new counsel brought an action in the U.S. District Court for the District of New Jersey in April of 1995 against Route Resources and its related companies to collect the withdrawal liability, again following the MPPAA procedures. Route Resources did not respond to the complaint, and the District Court awarded the Fund a default judgment.
The Fund argues that because the 1995 suit was brought within the six-year statute of limitations period under the MPPAA, it satisfied the statute of limitations as to all other entities in the same control group, due to the “single employer” principle. The Fund claims that because the MPPAA allows the Fund to treat all entities in a control group as a single entity, there can be only one judgment against that single entity. In short, “judg *309 ment against one is judgment against all.” Therefore, all future litigation against other entities in the same control group, even if postured as new claims under the MPPAA, should be construed as enforcement actions against the different entities comprising the “single employer.”
The Fund believed that by bringing an initial suit against one member of the control group, it would satisfy the MPPAA statute of limitations and provide further time to investigate the complicated history of private transactions to find other resources to satisfy its judgment. The Fund was justified in this belief because courts in this circuit have consistently held that this approach is permissible under the MPPAA. Specifically, this same pension fund was the plaintiff in two prior cases before the New Jersey district court, raising almost identical claims. In Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Gotham Fuel Corp., 860 F.Supp. 1044, 1051 (D.N.J.1993) and Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Able Truck Rental Corp., 822 F.Supp. 1091, 1095 (D.N.J.1993), Judges Ackerman and Lifland, respectively, held that under the MPPAA, members of a control group are “statutory alter egos.”[21] Thus, as courts have held in other “alter ego” cases, Judges Ackerman and Lifland determined that the Fund’s claims should be “construed as actions to enforce judgment” and will be considered timely “if the underlying action against the corporation was timely and the subsequent action to pierce the corporate veil to enforce the judgment was brought within the limitations period for enforcement of judgments.” Able Truck, 822 F.Supp. at 1095 (emphasis added) (citing Wm. Passalacqua Builders v. Resnick Developers South, Inc., 933 F.2d 131 (2nd Cir.1991)). The use of the word “construed” is noteworthy, as it shows a willingness among the courts to read complaints liberally when a plaintiff is seeking to enforce a prior judgment under an “alter ego” theory, or the statutorily analogous “single employer” theory.
Although the complaints filed in Able Truck and Gotham Fuel are not a part of the record in this case, counsel for the Fund certified at oral argument before us that she was involved in those prior cases on behalf of the Fund. She stated that in those cases she filed substantially the same complaint that she filed in the present case. Based on counsel’s explanation, which is further supported by the language of the district courts in Gotham Fuel and Able Truck “construing” the complaints as actions to enforce judgment, it appears that the complaints in all of these cases filed by the Fund used the same terminology. However, in the previous cases, the courts were
persuaded that pursuant to the single employer concept adopted by the Third Circuit in Barker & Williamson, supra, only one withdrawal liability judgment can exist against members of a controlled group. Thus, it follows that all subsequent actions against different members of a controlled group are actions to enforce the judgment previously entered....”
Able Truck, 822 F.Supp. at 1095. The District Court opinion in the present case, as affirmed by the majority here, eviscerates the concepts set forth in Barker & Williamson, and imposes a highly technical pleading requirement that frustrates the letter and the intent of the MPPAA.
*310 The majority here would prohibit the Fund from collecting its debt partly because it failed to adequately express the magic words “enforcement of judgment” in its complaint. However, even if this court would impose a strict pleading rule, requiring an explicit statement that an action seeks to enforce a prior judgment under ERISA, the complaint filed here by the Fund arguably would meet that requirement. The claim for relief pled all of the factual predicates required for enforcement of judgment, including acknowledgment of the 1995 judgment against Route Resources (paragraph 17), a factual determination that Holmes remained part of the control group due to his evasive transaction (paragraph 24), and a statutory basis for joint and several liability for the judgment among all control group members as required under the MPPAA (paragraph 31).[22]
The majority’s narrow view of the pleading, coupled with an impractical extension of the MPPAA statute of limitations requiring that actions to enforce an underlying judgment must also be brought within a six-year period, severely limits the purpose of the Act. I believe, in agreement with the district courts in Gotham Fuel and Able Truck, that the Fund satisfied the MPPAA statute of limitations when it brought the original suit against Route Resources in 1995. Therefore, under the applicable New Jersey law, the twenty year statute of limitations for enforcement of judgment applies to the present suit to enforce the 1995 judgment. N.J. Stat. Ann. § 2A:14-5.
III.
The majority attempts to distinguish Able Truck and Gotham Fuel on the facts by noting that in those cases, membership in the control group was conceded by the defendants, while in the present case, Holmes contests his control group status. The majority further holds that because six years expired prior to filing this suit against Holmes, the Fund is now prohibited from asserting that Holmes remained a control group member because his sale to Route Resources was intended to evade or avoid liability, effectively blocking the Fund from reaching Holmes’ assets. Both of these arguments miss the mark.
A.
First, by distinguishing Able Truck and Gotham Fuel based on Holmes’ dispute of his control group status, the majority states in a footnote that it need not decide the crucial issue of whether the “single employer” theory requires that “judgment against one is judgment against all.” Yet, in my view, we cannot effectively resolve this appeal without deciding this crucial legal question.
The importance of resolving whether “judgment against one is judgment against all” is highlighted by a disagreement *311 among several district courts across the country. For example, both the District Court opinion and the majority in this case draw support from a case decided in the Northern District of Illinois, Central States, Southeast and Southwest Areas Pension Fund v. Mississippi Warehouse Corp., 853 F.Supp. 1053 (N.D.Ill.1994). Although the majority attempts to distinguish Mississippi Warehouse from Able Truck and Gotham Fuel on the facts, even a cursory reading of Mississippi Warehouse shows a fundamental legal difference between these cases. The district court in Mississippi Warehouse plainly stated its disagreement with the New Jersey cases and refused to adopt the rule construing secondary suits as enforcement claims under the “single employer” theory, regardless of whether the defendant conceded or contested control group status.[23] 853 F.Supp. at 1058. Furthermore, the majority’s effort to distinguish the New Jersey district court cases from Mississippi Warehouse and the present case based on the defendants’ dispute of their control group status produces an untenable legal anomaly. The determination of whether a statute of limitations bars a suit cannot be affected, as the majority allows, by whether the defendant concedes or denies liability in the underlying suit. The operation of the statute of limitations is a legal concept, completely separate from the defendant’s underlying defenses, or lack thereof. The majority’s willingness to uphold a narrow interpretation of the MPPAA statute of limitations against those who concede liability, and yet apply a broader interpretation when the underlying liability is disputed, confuses the issue and fails to address the operative legal principle at bar. The majority position essentially means that if a defendant challenges his underlying liability in an action to enforce an MPPAA judgment, he can obtain the benefit of an abbreviated statute of limitations. Such a legal concept has no basis in the law, nor should it.
B.
Second, the majority acknowledges that the MPPAA requires disputes involving the “evade or avoid” provision to be resolved through arbitration. 29 U.S.C. §§ 1392(c), 1401(a)(1). However, the majority adopts the non sequitur that because the process for resolving the “evade or avoid” issue is prescribed under the MPPAA statutory framework, the six-year statute of limitations also applies as a bar to resolving this issue. There is absolutely no support in the MPPAA or the prior case law for this proposition, and the majority cites to none.
The statute of limitations in the MPPAA clearly refers to “action[s] brought under this section.” 29 U.S.C. § 1451(f) (emphasis added). On the other hand, the MPPAA’s arbitration provision requires that “disputes between an employer and the plan sponsor ... concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.”[24] 29 U.S.C. § 1401(a)(1) (emphases added). Section 1401(a)(1) refers to “disputes” concerning “determinations” because the items in sections 1381 through 1399 are all factual determinar tions that the MPPAA entrusts to the *312 discretion of the Fund. These factual determinations, such as whether a transaction was intended to “evade or avoid” liability, are not causes of action in and of themselves subject to the MPPAA statute of limitations. Rather, as the Supreme Court acknowledged in Concrete Pipe, they are “factual determinations” to be resolved through arbitration before a civil suit may proceed. 508 U.S. at 629, 113 S.Ct. 2264. The majority’s expansive application of the statute of limitations covering not only an original claim, but also the Fund’s ability to make factual determinations regarding an evasive transaction as part of an effort toq enforce judgment, is contrary to a reasonable construction of the statute. Also, it is contrary to this court’s acknowledged duty to interpret ERISA and the MPPAA liberally as remedial statutes. Barker & Williamson, 788 F.2d at 127.
I believe that the majority ultimately errs in its interpretation of the MPPAA by treating the question of whether Holmes can be considered a member of the control group as the threshold issue. The majority holds that regardless of whether the statute of limitations will be satisfied by a prior, timely claim against a member of the control group, this particular suit may not proceed because the statute of limitations bars the Fund from asserting that Holmes is still a member of the control group against whom the prior judgment may be enforced. I believe that this approach is ill advised, given the ability of employers in close corporations to hide their evasive intent behind a thicket of private transactions that may take several years to untangle, as occurred in this case.
Our review should be limited to the legal question of whether the “single employer” principle requires . that a timely claim against one control group member satisfies the MPPAA statute of limitations, leaving future actions against other control group members to be governed by the applicable state law statute of limitations for enforcement of judgment. If, as I suggest, the answer is affirmative, then the current action should be allowed to proceed as an enforcement suit. The MPPAA would then require recognition of the Fund’s factual determination that Holmes should be treated as a member of the control group because his sale was primarily intended to “evade or avoid” liability. If Holmes wishes to dispute that factual finding, he may do so in arbitration, as required under the MPPAA, before the claim proceeds in the District Court. Flying Tiger Line, 830 F.2d at 1248.
IV.
The majority contends that allowing this suit to proceed against Holmes in such a “belated” manner would be somehow unfair to Holmes, given that he sold his companies in 1988 and retired to Florida. This approach punishes the Fund for its investigation and delayed legal action, despite evidence that Holmes and Route Resources may have engineered a scheme designed to conceal assets from the Fund and obstruct detection of the culpable entities. Our court has held on several occasions that factual determinations regarding evasive transactions are left for pension funds and arbitrators to decide. The Fund’s factual determination should not be disregarded by granting summary judgment on the basis of an affirmative defense. Such a decision denies the Fund the opportunity set forth in the Act to challenge evasive and fraudulent transactions and transfers. We need only verify that Holmes was a member of the control group at some time prior to withdrawal from the Fund, and leave the resolution of this factual dispute to arbitration. See Bd. of Trustees of Trucking Employees of *313 N. Jersey Welfare Fund, Inc.—Pension Fund v. Centra, 983 F.2d 495, 501 (3d Cir.1992). This court should limit its inquiry to the legal question of whether the MPPAA statute of limitations bars this suit. To that end, the majority has fashioned a six-year time limit that applies to a pension fund’s original suit on the underlying claim, as well as all efforts to enforce a judgment against entities later determined to be members of the control group. Such a rule encourages employers to impede the collection of monies lawfully due pension funds and negates the arbitration provisions of the MPPAA for the factual determinations of whether members of the control group engaged in evasive and fraudulent schemes. The MPPAA never intended such a result. Furthermore, the majority’s rule is based, in part, on the unsupportable ground that it applies only to situations where a defendant disputes control group status that has not yet been conclusively determined by a court or arbitrator. As a result, the majority establishes an illusory dichotomy that avoids the operative legal issue.
I would affirm this circuit’s line of MPPAA cases by following the precedent set in Barker & Williamson. I would hold that judgment against one control group member shall be deemed judgment against all, construe the Fund’s claim as an action to enforce the 1995 judgment, vacate the summary judgment against the Fund in this proceeding, and remand the case to the District Court for further proceedings consistent with this opinion.[25]

. The MPPAA utilizes the definition of "control group” as prescribed in the Internal Revenue Code. 29 U.S.C. § 1301(b)(1).

. The Fund is able to bring an action against Holmes personally because he operated pro-prietorships under common control with Kero in his personal capacity without corporate protection.

. This argument should not be confused with an alter ego claim brought under state common law. The MPPAA’s "single employer” provision makes members of a control group "statutory” alter egos.

. In an attempt to justify its position that this complaint cannot be read as an enforcement action, the majority discusses at length the legal steps taken by the Fund that can be interpreted to show an intent to pursue Holmes through a new action under the MPPAA. I believe that the actions referenced by the majority do not prohibit the Fund from asserting that its current action is intended to enforce the 1995 judgment. Rather, the multiple allegations put forth by the Fund to describe its claim against Holmes are better interpreted as alternate legal theories that the Fund pursued. Given the silence in the MPPAA regarding enforcement of judgments that we now attempt to resolve, and this particular Fund’s past experience in Gotham Fuel and Able Truck, it is not surprising that the Fund pursued multiple theories of liability. The Fund should not now be penalized for its comprehensive approach to this litigation, much of which was initiated in response to the District Court's early rulings in the case.

. The court in Mississippi Warehouse only recognized the factual distinction from the New Jersey cases in a footnote, while discussing its disagreement on the law extensively in the body of the opinion. 853 F.Supp. at 1058, n. 2.

. The "evade or avoid” provision, 29 U.S.C. 1392(c), falls within the applicable range of sections 1381 through 1399, thereby designating it as a determination subject to arbitration.

. Because my analysis of this case would vacate the District Court judgment, I do not reach the issue of whether Holmes is entitled to interest payments and attorneys’ fees